IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ANDRE TROTTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION 08-0412-WS-M |
| ) | |
| **COLUMBIA SUSSEX CORPORATION,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

This matter is before the Court on the defendants' separate motions for summary judgment. (Docs. 85, 87, 89). The parties have filed briefs and evidentiary materials in support of their respective motions, (Docs. 86, 88, 90-92, 103-04, 107-11, 116, 118), and the motions are ripe for resolution.[1]  After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motions are due to be granted in part and denied in part.

## BACKGROUND

The plaintiff graduated from LeFlore High School in 1997.  Since earning a degree

---

[1]The plaintiff's motion to supplement, (Doc. 104), to which the defendants did not object, is **granted**.  The plaintiff's motion to substitute pleadings and deposition segments, (Doc. 106), to which the defendants did not object, is likewise **granted**.  The plaintiff's motion to supplement his brief and exhibits, (Doc. 109), is **granted** with respect to the filing of a second amended brief and the addition as an exhibit of the EEOC's letter of determination as to Dale Johnson.  The motion is **denied** with respect to the addition as an exhibit of Johnson's EEOC charge, since the defendants object, (Doc. 111), and the plaintiff has not explained his failure to submit the document previously.

The plaintiff has filed a total of three briefs.  (Docs. 103, 107, 110).  The Court will consider only the final version.

The defendants' motion to modify reply brief page limits, (Doc. 117), is **granted.**

in electrical and computer engineering from the University of Alabama and a master's degree in systems engineering from Johns Hopkins, he has been employed by Lockheed Martin as a system architect and control account manager in Florida (where he lives with his wife and two children) and Virginia. His job requires frequent travel, and he is a Gold Level Reward Member with the Marriott chain of hotels. The plaintiff is African-American.

From July 27 to 29, 2007, the plaintiff attended his ten-year high school reunion. On the nights of July 27 and 28, he stayed at the Marriott on Airport Boulevard in Mobile ("the Hotel"), which is franchised to the defendant Columbia Sussex Corporation ("Columbia"). According to the plaintiff, he requested a suite but was refused one because of his race. Instead, he rented a double room Friday night and also an adjoining double room Saturday night. The individual defendants are Suzanne Sapp (the Hotel's sales manager) and Mark Larkin (the Hotel's front office manager). Sapp and Larkin are white.

The second amended complaint alleges that Columbia violated Title II of the Civil Rights Act of 1964 and the Alabama Deceptive Trade Practices Act ("the Act") and that all three defendants violated 42 U.S.C. § 1981. (Doc. 96 at 7-9).[2]

## SUMMARY OF EVIDENCE

The evidence, viewed most favorably to the plaintiff, may be summarized as follows. The Hotel has four suites: 1703, 1803, 1902 and 2002. All but the last are considered "junior suites" because they have one king-sized bed. The other suite, 2002, is considered a "double suite" because it has two double beds.

Prior to the reunion weekend, the plaintiff reserved a regular room online. He was

---

[2]The second amended complaint also includes claims for outrage and negligent or wanton training and supervision. (*Id*. at 9-10). The plaintiff concedes that the defendants are entitled to summary judgment as to these claims. (Doc. 110 at 52-53).

aware from past experience with Marriott hotels that he could seek to upgrade this to a suite based on his reward membership.  On the night of July 26, on his way to Mobile from Florida, the plaintiff called the Hotel and spoke with Maranda Hance, a front desk agent.  The plaintiff told Hance he would like to reserve the Hotel's largest suite, which Hance identified as 2002.  Hance said the plaintiff would need to talk to the sales department to book the room, but it was closed for the day.  The plaintiff wanted to reserve the suite before arrival, and eventually Hance told him that 2002 was open and that she would hold it for him overnight under a code for Chevron, a corporate partner with the Hotel.  This was Hance's idea, not the plaintiff's.  Hance advised the plaintiff that Denise Hart, the Hotel's director of sales, would call him Friday morning.

Hart called the plaintiff on the road as promised.  Upon her inquiry, he confirmed that he did not work for Chevron but for Lockheed Martin.  After receiving this information and confirming the plaintiff's desire for the suite, she told him, "I have the room booked for you and the room is yours."  The plaintiff called back and requested to see the room upon his arrival, to which Hart agreed.

When the plaintiff arrived at the Hotel early Friday afternoon, he asked for Hart, but she was at lunch.  He was directed instead to Sapp.  The plaintiff explained that Hart had been going to show him the suite but was not there.  During the brief walk from her office to the front desk to retrieve a key, Sapp asked the plaintiff if he was having a meeting or party, and he told her he was not.  She also asked how many people would be in the room, and he told her a couple.

At the front desk, Sapp asked Larkin whether 2002 was available.  Larkin said that 2002 was available and that the plaintiff had it reserved.  As the plaintiff headed for the elevator, Sapp turned to Larkin and silently mouthed the words, "don't let him have it," "he can't have it," or words to that effect.  Larkin understood that he was not to rent the suite to the plaintiff.

Sapp and the plaintiff viewed 2002 and returned to the front desk a few minutes

later, and the plaintiff asked to begin the check-in process. Larkin announced that he had reserved 2002 for one of his frequent guests at 7:00 that morning and that he had forgotten this during his previous conversation with the plaintiff and Sapp. The plaintiff pointed out that Hart had told him well after 7:00 that the room was reserved for him, and that Larkin himself had just told him the room was reserved for him. Larkin simply repeated that he had forgotten the other reservation. Either 2002 or another suite was in fact available for rental at the time the plaintiff requested to be checked in to a suite.

The plaintiff called another hotel in search of a suite but, finding none, checked in to the regular room he had reserved previously. Larkin told the plaintiff he would call the frequent guest to see if he would be willing to move, but he did not do so and never had any intention of doing so. On Friday evening, Larkin called the plaintiff and left a voice message falsely stating he had called the frequent guest and that the guest was not willing to move.

On Friday night, 1703 was occupied by a Ms. Humphries. She did not reserve a suite. Instead, she reserved in advance several regular rooms for a single night. When she checked in — an hour or more after the plaintiff — she was advised by the front desk that she had been selected as "guest of the day" and upgraded to a suite. Humphries checked out on Saturday morning, and 1703 was available for rental for Saturday night. It remained unoccupied all night.

On Saturday morning, Yolanda Wells, a black female, worked the front desk. The plaintiff called to inquire about suite availability for Saturday night. Larkin was not working that day but, when he called in to check on things, Wells reported the plaintiff's question. Larkin advised Wells that she was not to rent a suite to the plaintiff under any circumstances. Wells accordingly told the plaintiff there were no suites available, but she then told him there were in fact suites available but that he would not receive one because

he was black.[3] She also advised the plaintiff that she had seen Sapp's silent mouthing to Larkin the previous day.

According to the defendants, the Hotel maintains an unwritten policy ("the Policy") discouraging the use of suites for parties (such as birthday parties and bachelor parties) and business meetings. According to Hart, if someone used the word "party" in describing how they intended to use a suite, rental would be discouraged. According to Sapp (whose source of information about the Policy is Hart), the Policy is triggered not only by the guest's express confirmation of intention but whenever the sales person subjectively "feel[s] there's going to be inappropriate use" of the suite.

According to Sapp's version of her conversation with the plaintiff, he made statements that caused her to believe that rental should be discouraged under the Policy. Given the opportunity, she would tell a customer she thought was trying to rent a suite for an inappropriate reason that "this isn't what the suites are designed for." She did not make any such statement to the plaintiff.

## DISCUSSION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a) and 1367. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

---

[3]The Court does not rely on Wells' opinion that the reason the plaintiff was not receiving a suite was because of his race.

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. [citation omitted] If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). "If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (internal quotes omitted).

The parties have submitted a large number of exhibits, some of which they have not cited or have cited only generally or in part. There is no burden on the Court to identify unreferenced evidence supporting a party's position.[4] Similarly, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, the Court's review is limited to those exhibits, and those portions of exhibits, to which the parties have specifically cited. The Court's review is similarly limited to those legal arguments they have expressly advanced.

**I. Section 1981.**

"All persons within the jurisdiction of the United States shall have the same right

---

[4]*E.g., Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."); *accord Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir. 1984); *Karlozian v. Clovis Unified School District*, 2001 WL 488880 at *1 (9th Cir. 2001); *see also* Local Rule 7.2.

in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens ...." 42 U.S.C. § 1981(a). "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id*. § 1981(b).

"The elements of a cause of action under § 1981 are (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Kinnon v. Arcoub, Gopman & Associates, Inc*., 490 F.3d 886, 891 (11th Cir. 2007). The defendants attack the second and third of these elements.

### A.  Denial of a Contract.

The defendants argue that the plaintiff cannot prove a claim under Section 1981 because he did in fact enter a contract for lodging (or more than one, if the second room for Saturday night is counted separately). (Doc. 86 at 28-30). They cite a number of cases indicating that a plaintiff who enters the contract he desires to enter, but who finds the experience unpleasant or demeaning, has no claim under Section 1981 because he has not been deprived of any right protected by the statute.[5] What they fail to provide is any authority for the proposition that a plaintiff who is refused the contract he desires because of his race has no claim under Section 1981 so long as he enters a different, less desired contract with the defendant. Under this theory, a theater could refuse admission to a black customer but escape liability because it agrees to sell her popcorn. Likewise, a restaurant could refuse to serve a black customer in the dining room but escape liability

---

[5]Such a rule might not apply to a contract that envisions ongoing performance (such as a contract for employment or for services in a restaurant or club), since the plaintiff could be deprived of the benefits, privileges, terms and conditions of the ongoing contractual relationship after it was entered. *Arguello v. Conoco, Inc*., 330 F.3d 355, 360-61 (5th Cir. 2003).

because it agrees to serve him in the back alley, or refuse to serve him steak but escape liability by agreeing to sell him a hot dog. The defendants offer nothing to suggest that Section 1981 countenances such contorted results.[6]

The defendants' own cases suggest that liability would flow from such conduct. In *Arguello v. Conoco, Inc*., 330 F.3d 355 (5th Cir. 2003), the Fifth Circuit stated that the plaintiff must show "some tangible attempt to contract that in some way was thwarted by the defendant." *Id*. at 358 (internal quotes omitted). According to the plaintiff's evidence, he overtly attempted to contract for a suite but was repeatedly thwarted by the defendants. Likewise, in *Gregory v. Dillard's, Inc*., 565 F.3d 464 (8th Cir. 2009), the Court affirmed that "unlawful interference by a merchant under § 1981 ... is established where the merchant 'blocks' the creation of a contractual relationship." *Id*. at 471 (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)). According to the plaintiff, the defendants blocked his efforts to create a contract to rent a suite.

The defendants quote — repeatedly — that estimable legal scholar Mick Jagger for the proposition that "you can't always get what you want." (Doc. 86 at 1, 31; Doc. 88 at 1, 12; Doc. 90 at 1, 20).[7] Fair enough, but even Professor Jagger recognizes there are

---

[6]In their reply brief, the defendants cite an additional case which they maintain supports their position. (Doc. 118 at 36 n.18). The citation comes too late, *see infra* Part I.C, but in any event it does not support the defendants' position. In *Higginbotham v. E.H., Inc*., 2005 WL 2709635 (S.D. Ga. 2005), a plaintiff who ordered a beverage and three hamburgers was sold the drink but was told the hamburgers could not be prepared because the grill was off. The Court noted that the plaintiff had been served in part, *id*. at *4, but that was not basis of the Court's ruling for the defendant. Instead, the Court noted the plaintiff could not support a prima facie case because she could not show that the white customer who ordered after her ordered from the grill or that the black customers who ordered before her had not, and she could not show pretext because she had no evidence the grill was not in fact turned off for cleaning. *Id*.

[7]The relevance of this refrain to the instant case is obscure. The plaintiff's claims are not based on failing to get what he wanted but on allegedly failing to get what he was legally entitled to receive — public accommodations free of race discrimination.

-8-

some things you need, and legal support for a summary judgment motion is one of them. That support is absent here.

In their reply brief, the defendants argue the plaintiff could not have been deprived of any protected right on Friday night because he entertained no guests and had only two people sleeping in the double beds of his regular room. (Doc. 118 at 35-36). As discussed in Part I.C, this argument comes too late to be considered. At any rate, the defendants cite no authority (beyond the Rolling Stones) for the proposition that Section 1981 is not violated if the plaintiff is refused the contract he seeks but enters another one that is adequate to cover his essential needs though not his desires.

### B. Intent to Discriminate.

Sapp says she was not motivated by race discrimination but by an attempt to enforce the Policy. (Doc. 86 at 30). She says that the plaintiff has "no evidence whatsoever" that she acted with the intent to discriminate on the basis of race because: (1) he has no evidence she ever allowed a white customer to rent a suite despite her misgivings over the customer's intentions; and (2) he has no evidence that she used racial slurs or exhibited racial animosity towards him or other African-Americans. (Doc. 86 at 30-31).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. ... Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark*, 929 F.2d at 608; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000). Instead, the movant must either negate with record evidence a necessary fact or element or the plaintiff's claim or point out, based on the record, the non-movant's inability to establish the fact or element. *E.g., Danskine v. Miami Dade Fire Department*, 253 F.3d 1288, 1293 (11th Cir. 2001). If the movant fails to meet this threshold burden, the motion must be denied without

considering the non-movant's showing.  *Fitzpatrick*, 2 F.3d at 1116.

Sapp offers no legal authority or discussion as to how evidence of intent is to be measured for purposes of the plaintiff's case.  She has thus failed to show that the plaintiff must necessarily lose if he has no evidence of the two circumstances listed above.  Even had she done so, she has not directed the Court to anything in the record that either negates those circumstances or establishes that the plaintiff cannot show them, and she has thus failed to shift the burden to the plaintiff to respond.

At any rate, evidence of Sapp's discriminatory animus is plain enough.  Sapp says she was enforcing the Policy but, according to the plaintiff's evidence, by the time Sapp made her almost instantaneous decision to refuse him a suite, the only information she had was his statement that he was *not* going to have a meeting, was *not* going to have a party, and would have only a couple of people in his room.  The defendants have not explained how that information could possibly trigger application of the Policy.  On the contrary, for Sapp's rejection of the plaintiff to be even a colorable application of the Policy, her version of their conversation would have to be credited, and that the Court may not do on motion for summary judgment.  The defendants have not explained why the jury, were it to believe the plaintiff's version of events, could not conclude that Sapp did not rely on the Policy and further conclude that she relied on the plaintiff's race instead.  Whatever arguments along these lines could have been made, the defendants have not advanced them, and the Court will not do so on their behalf.[8]

Larkin makes a similar argument, (Doc. 88 at 12), and it is subject to similar infirmities.  As with Sapp, he has failed to show that the plaintiff must lose absent

---

[8]Other evidence could strengthen the inference of racial motivation.  For example, Sapp's version of the Policy appears to provide more subjective discretion to reject a suite rental than does Hart's, even though Hart was Sapp's superior and source for the Policy.  Moreover, Sapp did not follow her usual course of informing the plaintiff why his proposed use of the suite was inappropriate.  This sampling is not exhaustive.  Because the discussion in text adequately disposes of the defendants' argument as to intent, no further discussion of such evidence is necessary.

evidence of the two circumstances listed above, so he has provided no legal basis for his argument. Also as with Sapp, he has not shown the Court that he has either negated those circumstances or demonstrated the plaintiff's inability to establish them, so he has provided no factual basis for his argument. These points are sufficient to require denial of Larkin's motion.

In their reply brief, the defendants state (for the first time) that Larkin did not rent an available suite to the plaintiff on Saturday because he "had several negative pieces of information" about the plaintiff from Hart and Hance "that made Larkin unwilling to rent the suite" to him because he "did not want to risk disturbance of other guests due to the potential of [the plaintiff] bringing several people to the suite late at night and the potential risk of losing business from those guests and having to refund their money." (Doc. 118 at 37).

The excerpts from Larkin's deposition on which the defendants rely, however, reflect only that he was told the plaintiff had incorrectly stated that he worked for Chevron and that Hance had promised him a suite. (Larkin Deposition at 65-67). If Hart and Hance told Larkin these things, it might cause him to doubt the plaintiff's veracity, but it is not clear how it would cause him to believe the plaintiff would have a party in the suite. At any rate, the deposition excerpts cited by the defendants do not reflect that Larkin relied on these statements from Hart and Hance in deciding not to rent the plaintiff an available suite. Nor is it clear that Hart and Hance actually made these statements to Larkin to begin with. The plaintiff denies having misstated anything and, were the jury to believe him, they could disbelieve that Hart and Hance made the statements to Larkin (because they would then be misstatements). In short, Larkin's belatedly articulated non-discriminatory reason for not renting a suite to the plaintiff does not advance his argument that the plaintiff cannot establish his discriminatory motive.

Columbia merely incorporates by reference the argument of Sapp and Larkin,

(Doc. 90 at 5), and so is bound by their fate.[9]

### C. Sapp's Personal Responsibility.

In their reply brief, the defendants argue that the plaintiff cannot show that Sapp "personally did anything to deny him rights protected by" Section 1981, because it was Larkin rather than she who told the plaintiff there was no suite available.  Thus, "[s]he did not actually deny him anything" and "bears no personal responsibility" for the discrimination allegedly practiced against him.  (Doc. 118 at 29-35).

The threshold problem with this argument is that it was not made until the reply brief, and district courts ordinarily do not consider arguments so tardily raised.  *Waddell v. Holiday Isle, LLC*, 2009 WL 2413668 at *4 & n.5 (S.D. Ala. 2009) (collecting cases).  The Court finds no reason to depart from this rule, and the argument can be rejected on timeliness grounds alone.[10]

At any rate, according to the plaintiff's evidence (and, indeed, even Sapp's and Larkin's), Sapp silently mouthed an instruction to Larkin not to rent the plaintiff a suite.  The defendants do not explain how Sapp can avoid liability under such circumstances simply because it was Larkin rather than she who verbally informed the plaintiff he would receive no suite.  Whatever arguments could be made along these lines, they have not been, and the Court will not supply the deficiency.

---

[9]The defendants devote the bulk of their reply brief to challenging what they term the plaintiff's "me too" evidence.  (Doc. 110 at 1-29).  Because the Court does not rely on any such evidence, it need not address these evidentiary issues herein.

[10]The defendants represent that Sapp's initial brief states the proposition that the plaintiff "must show that she personally denied him the right to engage in" an activity protected under Section 1981.  (Doc. 118 at 29).  The Court has reviewed Sapp's brief several times and is unable to locate any argument resembling the one made in reply.

**II. Title II.**

Columbia adopts the arguments raised concerning Section 1981. (Doc. 90 at 6). The Court has rejected those arguments in Part I.

The second amended complaint requests the Court to "[e]nter a permanent injunction, enjoining Columbia Sussex, its agents, employees, and successors, and those acting in concert with them from maintaining a practice, policy, custom and usage of discriminating against customers on the basis of their race or ethnicity." (Doc. 96 at 11). As the plaintiff recognizes, the only relief available under Title II is injunctive. (Doc. 110 at 25). He also acknowledges that, in order to obtain such relief, he must show a "real or immediate threat that the plaintiff will be wronged again - a likelihood of substantial and immediate irreparable injury." *Jackson v. Motel 6 Multipurpose, Inc*., 130 F.3d 999, 1007 (11th Cir. 1997) (internal quotes omitted). Columbia argues the plaintiff can make no such showing because his future return to the Hotel is speculative. (Doc. 90 at 6-7).

Columbia points out that the plaintiff lives over 500 miles from Mobile; that in 12 years since graduating from high school, he has stayed at the Hotel only once; and that he stayed at the Hotel in 2007 only because he wanted to stay with two old friends during the reunion. (Doc. 90 at 7). Columbia cites a reliable source for the first proposition, and the evidence supports the second. However, Columbia identifies no evidence to establish that the plaintiff would not have stayed at the Hotel, or any hotel, but for his desire to stay with friends.

The plaintiff has provided the following evidence of the likelihood of his returning to Mobile in the future: (1) he was born and raised in Mobile, through high school; (2) his father, grandmother, brother and numerous cousins and other relatives still live in Mobile (his mother is deceased); (3) his wife is also from Mobile; (4) his wife still has family in Mobile; (5) since graduating from college in 2001, he has returned to Mobile approximately three times a year; and (6) he fully expects to continue returning to Mobile periodically.

The plaintiff has provided the following evidence of the likelihood of his staying at the Hotel when in Mobile: (1) he has stayed in Marriott hotels hundreds of times (mostly on business); (2) his frequent stays have resulted in his Gold Level rewards membership; (3) that status entitles him to various benefits and amenities with Marriott that he would not receive with other chains; (4) he has had no bad experiences at any Marriott like the one made the basis of this lawsuit; and (5) he has stayed in another Mobile Marriott since the events of July 2007.

None of the cases cited by Columbia supports the proposition that the plaintiff's evidence is, as a matter of law, inadequate to support an award of injunctive relief. Moreover, the second amended complaint seeks injunctive relief not simply with respect to the Hotel but with respect to Columbia in general, and there is evidence that Columbia manages dozens of Marriott hotels across the country in cities to which the plaintiff frequently travels in his work. Columbia has not explained how its evidence, even if it were adequate as to Mobile, could be sufficient to require denial of injunctive relief as to all of Columbia's other Marriott properties.

## III.  Deceptive Trade Practices.

Columbia first argues that the plaintiff's state-law claim fails for the same reasons his federal claims fail. (Doc. 90 at 9). As discussed in Parts I and II, however, the federal claims remain.

The Act allows for recovery against one who violates the Act "and thereby causes monetary damage to a consumer." Ala. Code § 8-19-10(a). Columbia argues the plaintiff experienced no monetary damage because the cost of his regular rooms was less than the cost of a suite. (Doc. 90 at 10-11). The plaintiff asserts that his monetary damages are $1,250 in time he expended in investigating and attempting to resolve the matter without litigation and $42 in cell phone bills. (Doc. 110 at 52).

Columbia asserts that the plaintiff's employer reimbursed him through vacation

pay for the time he spent on the matter, (Doc. 118 at 39), but it offers no evidence to establish the point. Columbia also says it is unaware of any case considering expenses incurred in trying to rectify a deceptive trade practice after it has occurred to be "monetary damage" for purposes of the Act. (*Id*. at 39). The difficulty is that this is Columbia's motion for summary judgment, so it is Columbia's burden to show that "monetary damage" does not include such items, not the plaintiff's to show that it does. This matter of statutory construction will have to be resolved eventually, but Columbia offers the Court too few tools to do the job on motion for summary judgment.

## CONCLUSION

For the reasons set forth above, the defendants' motions for summary judgment are **granted** with respect to the plaintiffs' claims for outrage and negligent or wanton training and supervision. In all other respects, the motions are **denied**.[11]

DONE and ORDERED this 28th day of September, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[11] Because the Court does not rely on any of the evidence challenged therein, the defendants' motions to strike, (Docs. 112-15), are **denied as moot**. Neither side should assume that its presentation in support of or in opposition to these motions is adequate to assure a favorable ruling should similar motions be made at or before trial. The same may be said of the additional evidence and argument presented on the issue of intent to discriminate. (Doc. 110 at 2-5, 26-40; Doc. 118 at 1-29). Certainly the Court will not allow a case about whether Sapp, Larkin and Columbia discriminated against the plaintiff by not renting him a suite to degenerate into a limitless exploration of tangential matters.