IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANDRE TROTTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 08-0412-WS-M |
| | ) | |
| COLUMBIA SUSSEX CORPORATION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court on the plaintiff's motion for award of attorneys' fees, costs and expenses.  (Doc. 147).  The parties have submitted briefs and evidentiary materials in support of their respective positions, (Docs. 147, 148, 152, 154), and the motion is ripe for resolution.  After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

The plaintiff filed a complaint against the defendants alleging that they violated 42 U.S.C. § 1981 and that defendant Columbia Sussex Corporation ("Columbia") violated Title II of the Civil Rights Act of 1964 and the Alabama Deceptive Trade Practices Act. On September 28, 2009, the Court denied the defendants' motions for summary judgment as to these claims.  (Doc. 125).[1]  The final pretrial conference was held on October 21, with jury selection scheduled for November 3 and trial beginning November 5.  (Doc. 139 at 1).  On October 29, the parties notified the Court that they had settled the action,

---

[1]The Court did grant summary judgment with respect to the plaintiffs' state-law claims, (*id*. at 15), which the plaintiff abandoned.  (Doc. 110 at 52-53).

leaving the issue of attorney's fees for later resolution.  (Doc. 142).  The instant motion followed.

## DISCUSSION

All three statutes invoked by the plaintiff support an award of attorney's fees.  *See* 42 U.S.C. § 1988(b); *id*. § 2000a-3(b); Ala. Code § 8-19-10(a)(3).  The parties do not suggest that there is any meaningful difference in these provisions or their application, so the Court indulges the same assumption.

 "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995).  The Court applies the same rule here and limits its consideration to those arguments expressly advanced and supported by the parties.

## I.  Attorney's Fees.

"The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Bivins v. Wrap It Up, Inc*., 548 F.3d 1348, 1350 (11th Cir. 2008) (internal quotes omitted).  "The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve."  *Id*. (internal quotes omitted).

### A.  Reasonable Hourly Rate.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988).  "The fee applicant bears the burden of establishing ... hourly rates."  *Id*. at 1303.

**1. Mr. Brewster.**  Mr. Brewster requests an hourly rate of $300.  The defendants respond that his hourly rate should be set at $250.  Mr. Brewster, a specialist in civil rights litigation, has been awarded attorney's fees of $250 per hour four times in 2006 and 2007, and other lawyers prosecuting labor, employment and other civil rights cases in this district (whom the defendants admit are "similarly experienced") have been awarded fees at the same rate at least five times between 2004 and 2009.  (Brewster Affidavit at 7 & n.2; Doc. 152 at 2-3).[2]

The defendants suggest vaguely that the $250 rate Mr. Brewster received in November 2007 does not indicate a prevailing market rate, since the defendant apparently did not contest the rate.  (Doc. 152 at 3).  Whatever its merits in the abstract, the argument ignores both that Mr. Brewster has been awarded $250 an hour on at least three other occasions and that other comparably experienced civil rights attorneys have repeatedly been awarded the same amount.  The defendants do not suggest that these awards are subject to similar attack.

The defendants note that Mr. Brewster in November 2007 requested an hourly rate of $250, and they conclude that he thereby admitted that this is all he should ever be paid.  (Doc. 152 at 3-4).  The implicit assumption of this argument is that a prevailing market rate, once established, cannot rise, but the Court takes judicial notice that hourly rates do in fact tend to rise over time.[3]  By requesting $250 an hour in 2007, Mr. Brewster did not negate a higher hourly rate in the future.

---

[2]Mr. Brewster also cites a recent award to his partner based on an hourly rate of $300 an hour.  Because the award was the product only of a minor discovery dispute (so small, the defendant did not oppose the award), and because the Magistrate Judge explicitly stated that his award would not preclude the defendant from challenging the hourly rate at the conclusion of the case, the Court assigns no weight to this award.

[3]Mr. Brewster's history provides an example.  He was awarded hourly rates of $110 in 1990; $150 in 1997; $160 in 1998; $170 in 1999; $225 in 2004; and $250 in 2006.  (Brewster Affidavit at 7-8).

The defendants acknowledge that hourly rates in this district for civil rights attorneys comparable to Mr. Brewster have been stuck at $250 for six years.  They argue, however, that Mr. Brewster cannot justify an increase in his hourly rate without evidence that his skills, experience and reputation have significantly increased since he was last awarded fees, and they assert there has been no such increase since his last award in November 2007.  (*Id*. at 4).  Mr. Brewster, however, has continued to hone his skills and supplement his experience in the past two years, prosecuting at least 13 other actions (plus this one) in this district between November 2007 and October 2009.[4]  The defendants do not suggest that Mr. Brewster's considerable reputation has been diminished during that interval.

The defendants' position is that Mr. Brewster's hourly rate should be established based on past awards and any additional skills, experience and reputation he has gained since.  Their argument leads inexorably to the conclusion that his hourly rate should be increased above $250.  The question becomes the degree of increase.

Mr. Brewster and his declarants suggest that application of the *Johnson* factors supports a $300 rate.  It is true that, "[i]n determining what is a reasonable hourly rate and what number of compensable hours is reasonable, the Court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974)." *Bivins*, 548 F.3d at 1350.  However, most of those factors relevant to hourly rate are already accounted for in the recent history of fee awards.  The factors noted by Mr. Brewster and his declarants which are arguably unique to this case and not captured by past awards are the result obtained, the novelty or difficulty of the questions, and the undesirability of the case.

The result obtained by the settlement (which will not be disclosed due a confidentiality agreement) was significant but hardly of a magnitude that begs for an

---

[4]All were in his area of expertise, including Title VII, ERISA, FMLA, ADA, FLSA, and Section 1983 (excessive force).

hourly rate above $250.[5]  The novelty and complexity of the issues is addressed by the number of hours reasonably expended, not by the hourly rate.  *Blum v. Stenson*, 465 U.S. 886, 898 (1984); *Johnson*, 488 F.2d at 718.

Mr. Brewster and his declarant peg the undesirability of the case to its contingent nature (with its attendant  risk of losing without compensation and with unreimbursed expenses), the difficulty of prevailing, the unlikelihood of a large damages award, the delay in payment even on successful cases, the reluctance of practitioners to accept cases requiring mastery of technical legal matters or appearances in federal court, and the unpleasant scrutiny visited by a fee application.  (Brewster Affidavit at 17-18; Bagwell Declaration at 15).  Undesirability, however, has to do with the social stigma of accepting certain kinds of cases and any resulting economic impact on counsel's practice, *Johnson*, 488 F.2d at 719, something Mr. Brewster does not allege.  What Mr. Brewster and his declarant classify as aspects of undesirability are either irrelevant to the hourly rate,[6]

---

[5]Mr. Brewster notes that the settlement amount exceeds the amount his other public accommodations and fair housing clients have recovered.  (Brewster Affidavit at 17).  That is a quite finite universe of comparators, and the amount of excess is not dramatic.

[6]For example, the lack of substantial damages is irrelevant because the very purpose of an attorney's fee statute (at least, Section 1988) is to allow counsel a reasonable fee despite their absence.  *E.g., Cullens v. Georgia Department of Transportation*, 29 F.3d 1489, 1493 (11th Cir. 1994) ("The Supreme Court has rejected proportionality of damages as a basis for a fee award," because civil rights litigation vindicates important civil and constitutional rights which cannot be measured strictly in monetary terms and which the public shares the plaintiff's interest in vindicating).

treated other than by adjusting the hourly rate,[7] or encompassed in other *Johnson* factors.[8]

Thus, only the skill, experience and reputation of Mr. Brewster (itself a *Johnson* factor), as enhanced in recent years, can justify an hourly rate above the $250 that he and similar attorneys have been awarded the past several years. The Court concludes that this consideration justifies an hourly rate for Mr. Brewster of $280 as of the October 2009 conclusion of the litigation.

**2. Mr. Mackey.** Mr. Mackey requests an hourly rate of $300, while the defendants argue for a $175 rate. Mr. Mackey acknowledges that he is not an expert in civil rights law but instead focuses on complex, paper-intensive litigation in such areas as commercial and construction litigation, nursing home abuse, insurance cases, and personal injury litigation. (Mackey Declaration at 1-2). He is, in Mr. Brewster's words, a "trial lawyer," (Brewster Affidavit at 5), and over 2/3 of his time on this case was billed to depositions. (Doc. 147, Exhibit 10).

The defendants argue that, because Mr. Mackey does not specialize in civil rights litigation, his hourly rate should be lower than Mr. Brewster's. (Doc. 152 at 4-5). This

---

[7]The ordinary means of accounting for delay in payment is to use the hourly rates that "prevail at the completion of the case." *Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1227 (11th Cir. 2008), *cert. granted in part*, 129 S. Ct. 1907 (2009); *accord Gray ex rel. Alexander v. Bostic*, 570 F.3d 1321, 1327-28 (11th Cir. 2009).

[8] The risk of loss inherent in contingency cases depends on the difficulty of establishing the merits of the case, and this is "ordinarily reflected ... either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). Hours are discussed in Part I.B, and Mr. Brewster's skill and experience constitute a separate *Johnson* factor concerning the hourly rate.

appears to be correct.[9]  Perhaps good arguments could be made to the contrary, but the plaintiff has not raised them.

Unlike Mr. Brewster, Mr. Mackey does not establish a baseline prevailing rate drawn from previous awards to him or similarly skilled and experienced lawyers.  His only identified fee award was in 1999, (Mackey Declaration at 3),[10] and he identifies no awards to other lawyers on which he relies.  The Court must therefore resort to the *Johnson* factors in the first instance.

As noted, the first two factors (the time and labor required and the novelty and difficulty of the questions) are addressed under the reasonableness of hours expended, not the reasonableness of the hourly rate.  As to the "skill requisite to perform legal service properly," 488 F.2d at 718, Mr. Mackey adopts the position of Mr. Brewster, who in turn emphasizes his experience in public accommodation and fair housing cases, as well as employment discrimination and other civil rights cases.  (Brewster Affidavit at 12).  This factor, however, emphasizes the attorney's actual performance in the case under review, not his skill level generally, 488 F.2d at 718, and Mr. Mackey has not provided

_____

[9]*See Norman*, 836 F.2d at 1301 ("A lawyer who has to educate himself generally [as to the substantive law] may ultimately be as effective as a specialist, but he has no right to expect to be reimbursed at the same rate as a lawyer who begins his preparation with the finer points raised by the particular case."); *see also Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996) (approving a higher hourly rate to an experienced civil rights lawyer than to an experienced litigator with no civil rights experience); *Johnson*, 488 F.2d at 718 ("An attorney specializing in civil rights may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience.").  The plaintiff concedes that in this litigation Mr. Brewster "always had a better understanding of the facts and its [sic] inter-relationship to the law."  (Doc. 154 at 8).

[10]Mr. Mackey indicates that, in past collaborations with Mr. Brewster, they have obtained "good recoveries for our clients and hourly fees which came in above $275.00 to $300.00 per hour."  (*Id*.).  It appears that Mr. Mackey is referring to payments pursuant to contingency fee agreements rather than fee awards since he also states he has not received a fee award since 1999, (*id*.), and since Mr. Brewster does not claim to have ever been awarded over $250 an hour.

information from which the Court can intelligently assess this factor.

As to the "preclusion of other employment," 488 F.2d at 718, Mr. Mackey suggests that his work on this case prevented him from accepting other work that typically brings in more revenue. (Mackey Declaration at 3). His time records, however, reflect only 85.7 hours expended over the course of 17 months — an average of five hours a month and not enough to crowd out other work. While Mr. Mackey indicates that he did not record all of his time, there is no basis for concluding that the omitted hours are of such magnitude as to have precluded other employment.

Mr. Mackey's treatment of the fifth *Johnson* factor — the "customary fee," 488 F.2d at 718 — is limited to adoption of Mr. Brewster's comments, which rely on the fee awards addressed in Part I.A.1. (Brewster Affidavit at 13). The customary fee factor, however, addresses fees paid by a willing client, not fees awarded by a court, which is a separate *Johnson* factor. 488 F.2d at 719. The Court therefore has no evidence of a customary fee.[11]

As to the sixth factor, Mr. Mackey's fee was contingent rather than fixed. As to the seventh, he acknowledges that time limitations "were not a factor for me." (Mackey Declaration at 4). As to the tenth, he relies on Mr. Brewster's unavailing arguments as to the undesirability of the case. As to the eleventh, he has no continuing professional relationship with the plaintiff that might provide an incentive to cut his fee. 488 F.2d at 719.

The eighth factor, "[t]he amount involved and the result obtained," 488 F.2d at 718, considers both the amount of damages awarded and the litigation's "effect on the

---

[11]Declarant Bagwell speaks briefly about the billing rates of experienced lawyers generally in "weird or complex cases," but *Johnson* limits the customary fee analysis to that charged "for similar work," 488 F.2d at 718, and he has no evidence of charged rates for civil rights litigation. Mr. Mackey states that he and Mr. Brewster have received fees of $275 to $300 an hour in some of their collaborative civil rights and employment cases, but he is evidently referring to payment pursuant to a contingent fee arrangement, in which the hourly rate is a function of the success of the lawsuit rather than a pre-set rate.

law." *Id.* Given a settlement and an unremarkable summary judgment order, Mr. Mackey does not suggest that the litigation has had any effect on the law. Instead, he adopts Mr. Brewster's position that the amount received was excellent, given: the plaintiff's minimal monetary damages; his limited emotional suffering; his pleasure that the defendants (improperly) filed an unaccepted Rule 68 offer of judgment (thereby making public, in conjunction with the ultimate confidential settlement, a concession of damages due him); his satisfaction that the defendants will pay attorney's fees (because it will publicly teach them a lesson); his success at fending off summary judgment; and Mr. Brewster's lower settlements in other public accommodations and fair housing cases. (Brewster Affidavit at 14-17). The Court does not discern how these circumstances support an unusually high hourly rate.

Surviving summary judgment is simply a necessary predicate to an eventual recovery; it is not victory itself. The plaintiff's subjective satisfaction with the result would appear irrelevant to the objective value of the result. The public nature of the fee award is an essentially universal aspect of success on the merits and so cannot make this case more impressive than any other. Likewise, the filed offer of judgment is no more public than a jury verdict; at any rate, plaintiff's counsel cannot take credit for the defendants' decision to file it in violation of Rule 68. As noted previously, the degree by which this settlement exceeds those of other cases is modest, perhaps cause for celebration but not an elevated hourly rate. Similarly, while the settlement may be larger than counsel expected,[12] in absolute terms "the amount involved" remains limited. Nor

---

[12]The current downplaying of emotional distress damages reflects a dizzying pivot, given that the plaintiff's brief in opposition to summary judgment insisted that he felt "he had been treated less than a human should be treated," that he was "disgusted," that he was "extremely embarass[ed]," that he felt "demeaned," that he "confided in his wife about his anguish," that he "lost sleep about it," that he "was so distressed he woke up in the middle of the night sitting on the side of the bed thinking about what to do," and that it "consumed [his] thoughts." (Doc. 107 at 20-21).

Moreover, the amended complaint sought punitive damages under Section 1981,

does the plaintiff offer any authority for the implicit assumption that exceeding expectations demonstrates an excellent "result obtained" however pedestrian the actual amount.

The final two *Johnson* factors are the "experience, reputation, and ability" of the attorney and "[a]wards in similar cases."  488 F.2d at 718-19.  Mr. Mackey's superior experience, reputation and skill are well set out in the plaintiff's papers, which are in accord with the Court's own awareness of his ability over 25 years of practice.  While Mr. Mackey may not be an expert in civil rights litigation, neither is he a novice, having collaborated with Mr. Brewster on over a dozen civil rights cases in this district.  The Court must also recognize that in 1999, while serving in a similar collaboration with Mr. Brewster, Mr. Mackey received a fee award in a Title VII case in this district at an hourly rate of $170.  (Mackey Declaration at 3).  The Court also notes that a local attorney with ten years experience, in only his fifth FLSA case in this district and after a judgment smaller than the settlement herein, was awarded a $225 hourly rate in 2004.  (Brewster Affidavit at 7 n.2).

Considering all the *Johnson* factors, the Court concludes that Mr. Mackey should be compensated at an hourly rate of $250.

### B.  Hours Reasonably Expended.

Mr. Brewster seeks compensation for 298.8 hours, Mr. Mackey for 85.7 hours. (Brewster Affidavit at 20; Mackey Affidavit at 2).

"Fee applicants must exercise what the Supreme Court has termed billing judgment. ...  That means they must exclude from their fee applications excessive, redundant, or otherwise unnecessary [hours], ... which are hours that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill,

---

(Doc. 96 at 8, 11), and the plaintiff has given no indication that an award of such damages was unrealistic.

reputation or experience of counsel." *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (citations and internal quotes omitted). That is, "a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights ...." *Norman*, 836 F.2d at 1301.

"If fee applicants do not exercise billing judgment, courts are obligated to do it for them ...." *Barnes*, 168 F.3d at 428. In making this assessment, "evidence of prevailing views among practitioners in the area on such subjects" is helpful, *Norman*, 836 F.2d at 1301, along with "the court's own knowledge and experience." *Barnes*, 168 F.3d at 428. However, it must be remembered that "the measure of reasonable hours is determined by the profession's judgment of the time that may be consciably billed and not the least time in which it might theoretically have been done." *Norman*, 836 F.2d at 1301, 1306. Because the analysis "contemplate[s] a task-by-task examination of the hours billed," a fee plaintiff cannot avoid a reduction as to a particular task by arguing that the total number of hours spent on the litigation is reasonable. *Barnes*, 168 F.3d at 429.

Most of the defendants' complaints concerning the hours expended center on the plaintiff's employment of two lawyers and an alleged resulting duplication of effort. "Redundant hours generally occur where more than one attorney represents a client." *Norman*, 836 F.2d at 1301-02. "However, there is nothing inherently unreasonable about a client having multiple attorneys. ... For that reason, a reduction for redundant hours is warranted only if the attorneys are unreasonably doing the same work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Barnes*, 168 F.3d at 432 (citations and internal quotes omitted). The burden to show this rests on the fee applicant. *Id*.

-11-

**1. Deposition attendance.**

Both Mr. Brewster and Mr. Mackey attended 11 of the 16 depositions. The defendants argue that only one should have attended and that 38.3 duplicative hours should be cut. (Doc. 152 at 9-11).

The depositions at issue include those of the plaintiff; the three defendants; four plaintiff's witnesses; and three defense witnesses. All three declarants attest that it is customary practice to have two lawyers attend depositions of the parties and major fact witnesses. The plaintiff does not assert that deponents Hance, Hart, Evans and McAuthor fit this description. (Doc. 154 at 7-9). Accordingly, the Court concludes that staffing these depositions with two lawyers is not customary practice. Thus, the time of the second lawyer will be eliminated.[13]

The plaintiff asserts that deponents Wells, Spencer and Payne were critical witnesses for purposes of the declarants' statement of the customary practice. (Doc. 154 at 9). The Court can confirm from its familiarity with the case (especially from the motions for summary judgment and motions in limine) that all three were major witnesses, because they were eyewitnesses to the treatment of either the plaintiff, other black customers, or white customers treated disparately. The remaining deponents were parties and necessarily major witnesses, and the defendants' sending of two lawyers to the plaintiff's deposition reinforces the declarants' evidence as to customary practice. As to all these deponents, the plaintiff has satisfactorily established that it is customary practice for two lawyers to attend.

_____

[13]For the Evans and McAuthor depositions, this reduces Mr. Mackey's hours by 5.5 (3.5 of which he concedes were billed in error). For the Hart deposition, this reduces Mr. Brewster's hours by 0.3. The calculation for the Hance deposition is trickier, because the parties consolidate those hours with those for Larkin's deposition, which was taken the same day. Based on the deposition excerpts submitted on motion for summary judgment, the Court concludes that Hance's deposition consumed 1.5 hours, and Mr. Brewster's hours will be reduced correspondingly. (Doc. 91, Exhibit 11; Doc. 116, Exhibits 1, 4).

The seven remaining depositions were staffed as follows:

| | |
|---|---|
| Defendant Columbia | Taken by Brewster, Mackey in attendance |
| Defendant Sapp | Taken by Mackey, Brewster in attendance |
| Defendant Larkin | Taken by Mackey, Brewster in attendance |
| Witness Payne | Taken by Mackey, Brewster in attendance |
| Plaintiff | Defended by Brewster, Mackey in attendance |
| Witness Wells | Defended by Mackey, Brewster in attendance |
| Witness Spencer | Defended by Mackey, Brewster in attendance |

The burden lies with the plaintiff to establish that sending both lawyers to these depositions "reflects the distinct contribution of each lawyer to the case." *Barnes*, 168 F.3d at 432. This showing must be made on a task-by-task basis and on "the record" by "affidavits or by requesting an evidentiary hearing," not by conclusory statements in affidavit or by non-evidentiary assertions. *Id.* at 433.

Mr. Brewster states that he concentrated on factual investigation, preparing written discovery, and researching and writing, while Mr. Mackey, who is "very effective in conducting depositions," contributed to developing "what strategy to undertake in depositions and what approach and deposition questions to take." (Brewster Affidavit at 5-6). That is, Mr. Brewster maintained command of the legal requirements for recovery, the available evidence favorable to each side, and the needs for additional favorable and countering evidence, while Mr. Mackey led the effort to obtain additional favorable evidence, and to contain unfavorable evidence and contentions, at deposition.

With this understanding of counsel's roles, it is clear that each made a distinct contribution to the taking and defense of the five depositions at which Mr. Mackey served as principal counsel. Mr. Mackey, more skilled in the art of depositions, posed questions and raised objections, with Mr. Brewster present to ensure that important lines of inquiry, including those exposed by the depositions themselves, were explored sufficiently to optimize the plaintiff's chances of success. As to these five depositions, the plaintiff has

-13-

met his burden.[14]

The depositions of the plaintiff and the corporate defendant stand on different footing.  Even though Mr. Mackey is the superior examiner, Mr. Brewster conducted Columbia's 30(b)(6) deposition and defended the plaintiff's.  There is nothing wrong with him doing so, but it leaves open to question how Mr. Mackey's presence reflected a distinct contribution.  The plaintiff concedes that Mr. Mackey was present for barely two hours of his 6.7-hour deposition, which makes it even less likely that his presence contributed uniquely to the defense of the deposition.  Mr. Brewster states that he conducted the corporate deposition (the last one taken) because he understood corporate policies and because his recollection of the other depositions was fresh. (Brewster Affidavit at 5).  In his reply brief, the plaintiff asserts that Mr. Mackey was nevertheless "actively involved" in the corporate deposition, (Doc. 154 at 7), but he neither explains this involvement nor provides evidence that it occurred.  Accordingly, the Court concludes that the plaintiff has not met his burden as to these depositions, and Mr. Mackey will not be compensated for those hours.[15]

### 2.  Deposition preparation.

The defendants seek to cut 6.8 hours of preparation time by Mr. Brewster as redundant with preparation time by Mr. Mackey.  (Doc. 152 at 11).  Because Mr. Brewster had greater command of the facts and of the governing law than Mr. Mackey, his participation in this preparation reflected a distinct contribution, and the declarants indicate this is a customary practice.  No time will be cut on this basis.

---

[14]The defendants cite a number of cases, mostly from district courts outside the Eleventh Circuit, in which the deposition time of a second lawyer was cut.  (Doc. 152 at 6-8).  In none of them, however, did counsel offer evidence of a distinct contribution by each.

[15]This ruling eliminates 7.0 hours for the corporate deposition and 5.3 hours for the plaintiff's deposition (3.0 of which he acknowledges were billed in error).

### 3.  Counsel conferences.

Counsel billed 1.9 hours to conferences with each other.[16]  The defendants seek to cut this amount in half, to 0.95 hour.  (Doc. 152 at 13).  They do not explain how two lawyers can manage a case for a year and a half without ever conversing, nor do they explain how less than one hour of such conferences could be viewed as excessive.[17]  No time will be cut on this basis.

### 4.  Other redundant work.

The defendants seek to cut 3.05 hours concerning discovery and witness meetings. (Doc. 152 at 12).  They offer no argument in support, and the Court's discussion above adequately addresses the defendants' request.  No time will be cut on this basis.

### 5.  Motion to compel.

Mr. Brewster billed 13.1 hours, and Mr. Mackey 1.8 hours, in connection with the plaintiff's motion to compel.  The defendants argue that the Court should deny all such fees, both because the defendants prevailed as to its primary, work product objection and because the Magistrate Judge "did not see fit to award fees" at the time.  (Doc. 152 at 15-16).  Mr. Brewster has unilaterally agreed to cut 4.85 of his hours.  (Brewster Affidavit at 4 n.1; Doc. 154 at 5 n.1; *id*. at 12).

The defendants note that "the degree of success obtained" is a key consideration under fee-shifting statutes.  While this may be a true statement with respect to the case as a whole, *e.g., Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001), the

---

[16]According to counsel, in their billing judgment they eliminated most of their entries reflecting conferences with each other.

[17]Absent authority that counsel can never charge for conversing with each other (even though it is a ubiquitous aspect of multi-lawyer representation of defendants), the Court cannot conclude that the de minimis amount requested is unsustainable.

defendants offer no authority for the proposition that it applies independently to each subsidiary motion litigated during the case, and the Court will not supply the deficiency. The same is true of the suggestion that fees under a fee-shifting statute must be refused if fees under Rule 37 were not awarded.[18]

The defendants also ask the Court to cut Mr. Mackey's time as duplicative with Mr. Brewster's. (Doc. 152 at 13, 14 n.1). The plaintiff does not address this request. Given his position that Mr. Brewster was in charge of both written discovery and research/writing and that Mr. Mackey's focus was on depositions, that silence is dispositive.

In sum, Mr. Brewster's time will be cut by 4.85 hours and Mr. Mackey's by 1.8 hours.


### 6.  Abandoned defendant.

The plaintiff initially sued Marriott International, Inc. but voluntarily dismissed this defendant. The defendants ask the Court to cut the 1.1 hours Mr. Brewster billed to complete the dismissal. (Doc. 152 at 16). Mr. Brewster agrees to this. (Doc. 154 at 5 n.1; *id.* at 12).


### 7.  Clerical/non-lawyer work.

The defendants request the Court to cut 3.1 hours of Mr. Brewster's time, and 0.1 hour of Mr. Mackey's time, because it consists of e-mail correspondence to and from defense counsel and his secretary concerning depositions; preparing cover letters to defense counsel and the client; arranging for court reporters; telefaxing documents; and preparing deposition notices. (Doc. 152 at 16-17).

"It is appropriate to distinguish between legal work, in the strict sense, and ...

---

[18]The Court is unable to locate any indication that the plaintiff even requested such an award, much less that the Magistrate Judge affirmatively denied any such request.

clerical work, ... which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available." *Johnson*, 488 F.2d at 717.  Indeed, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 272, 288 n.10 (1989).

The defendants' challenge to the e-mail correspondence and cover letters to counsel and client fails because they have not raised a suspicion that the content of the communications was so superficial as to amount only to clerical work.[19]  Likewise, the preparation of deposition notices (which often include requests to bring specific documents selected by counsel) does not of itself suggest a merely clerical activity.  The Court does agree that the entries for communicating with defense counsel's secretary, arranging for court reporters, and telefaxing documents are facially clerical.  Accordingly, Mr. Brewster's time will be cut by 0.8 hour.

### C.  Lodestar Amount.

Mr. Brewster requested compensation for 298.8 hours, of which the Court has cut 8.55, leaving 290.25.  At an hourly rate of $280, Mr. Brewster's lodestar amount is $81,270.

Mr. Mackey requested compensation for 85.7 hours, of which the Court has cut 19.6, leaving 66.1.  At an hourly rate of $250, Mr. Mackey's lodestar amount is $16,525.

### D.  Lodestar Adjustment.

As noted, there is a "strong presumption that the lodestar is the reasonable sum the attorneys deserve."  *Bivins*, 548 F.3d at 1350.  The plaintiff does not seek an upward adjustment, but the defendants ask the Court to impose a 30% reduction on the lodestar amount.  (Doc. 152 at 22).

---

[19]The entries reflect that defense counsel responded to several of the e-mails, suggesting they were not merely clerical messages.

The defendants argue that limited success in a lawsuit can justify a downward adjustment.  They are correct.  *E.g., Bivins*, 548 F.3d at 1350-51 ("When the number of compensable hours and the hourly rate are reasonable, a downward adjustment to the lodestar is merited only if the prevailing party was partially successful in its efforts.").  The defendants point to several indicia of the plaintiff's limited success, discussed below.

First, they argue that, in addition to his three statutory claims, the plaintiff advanced a separate "claim" for "pattern and practice," which he "abandoned."  (Doc. 152 at 20).  It is true that, when a plaintiff is unsuccessful on one of his claims for relief and the hours expended on that claim cannot easily be segregated and disallowed,[20] a downward adjustment may be appropriate.  *E.g., Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir. 1987).  While a pattern and practice may be advanced as a claim, *e.g, Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 965 n.18 (11th Cir. 2008), it may also be advanced as a means of proving discriminatory intent under a separate claim.  *E.g., Cooper v. Southern Co.*, 390 F.3d 695, 723 (11th Cir. 2004).  As is plain from its language, the amended complaint accomplished only the latter. (Doc. 96 at 7).  Nor have the defendants explained how the parties' settlement negated success on a pattern and practice theory, just as they have not suggested that the settlement reflects the failure of any of the plaintiff's three claims.

The defendants also assert that limited success supporting a downward adjustment is established by comparing the relief the plaintiff received to that which he demanded.  In particular, they note that the settlement amount is well below his early settlement demands and that the settlement does not provide for the injunctive relief sought in the amended complaint.  (Doc. 152 at 20).  A court may compare the relief requested to the relief received in measuring the degree of the plaintiff's success.  *Popham*, 820 F.2d at 1580-81.  In *Popham*, however, the plaintiff was awarded only 1.5% of his demand, while

---

[20]As counsel accomplished in their exercise of billing judgment with respect to the plaintiff's abandoned tort claims.

here the plaintiff received between 20% and 25% of his highest, net-of-fee demand (and approximately 30% to 55% of his earlier demands). The defendants have offered no authority for the proposition that such a respectable ratio supports a downward adjustment.[21]

As to the plaintiff's failure to receive an injunction, "a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Hensley v. Eckerhart*, 461 U.S. 424, 435 n.11 (1983). The mere fact that the amount of fees exceeds the amount recovered does not suffice to warrant a downward adjustment under this inquiry, because "[t]he Supreme Court has rejected proportionality of damages as a basis for a fee award." *Cullens v. Georgia Department of Transportation*, 29 F.3d 1489, 1493 (11th Cir. 1994) (describing *City of Riverside v. Rivera*, 477 U.S. 561 (1986) (plurality) (upholding a fee award exceeding $245,000 on a recovery of $33,350); *see also Williams v. Roberts*, 904 F.2d 634, 636, 640 (11th Cir. 1990) (in light of *Rivera*, the trial court did not abuse its discretion by not making a downward adjustment when attorney's fees were almost three times the damages awarded). At any rate, the defendants have not invoked this portion of *Hensley*, and the Court will not construct arguments on their behalf.

Apart from their "limited success" argument, the defendants argue a downward adjustment should be imposed because the plaintiff unreasonably expended time trying to prove up a pattern of discrimination by the defendants against black *employees* as well as customers. (Doc. 152 at 21-22). They cite no authority for the proposition that a downward adjustment can be based on such considerations and, as noted above, "a downward adjustment to the lodestar is merited *only* if the prevailing party was partially

---

[21]It is worth noting that the settlement amount is many times larger than the defendants' highest pre-litigation settlement offer. Thus, most of the settlement amount must be attributed directly to the litigation effort and not to any pre-existing disposition of the defendants to pay a significant amount.

successful in its efforts." *Bivins*, 548 F.3d at 1350-51 (emphasis added); *see also*

*Hensley*, 461 U.S. at 435 ("Litigants in good faith may raise alternative legal grounds for

a desired outcome, and the court's rejection of or failure to reach certain grounds is not a

sufficient reason for reducing a fee.").[22]

      Finally, the defendants argue that a downward adjustment should be imposed

because the case did not create new law and did not serve the public interest.  (Doc. 152

at 22).  These considerations, however — as the defendants' own authority makes plain

— are relevant only in determining whether a plaintiff receiving merely nominal damages

nevertheless accomplished something that would make an award of attorney's fees

appropriate.  *Farrar v. Hobby*, 506 U.S. 103, 122 (1992) (O'Connor, J., concurring).

They are inapplicable here.[23]

      In sum, the Court hews to the "strong presumption" that the lodestar represents the

appropriate award and declines to adjust that amount either upward or downward.


## II.  Expenses.

      The defendants challenge four categories of expenses requested by counsel.  (Doc.

152 at 23).  They concede that all other items, totaling $6,288.57, should be awarded.

(*Id.*).  The burden is on requesting counsel "to [s]ubmit a request for expenses in a form

that demonstrates his entitlement to them."  *Loranger v. Stierheim*, 10 F.3d 776, 784 (11th

---

[22]The defendants insist these hours were not reasonably expended, (Doc. 152 at
21), but they did not attempt to exclude them in Part I.B on that basis.  Nor is it clear that
the plaintiff's pursuit of such matters was unreasonable.  The defendants' motion in
limine concerning such evidence was still pending when the action settled, so the Court
never resolved that or any related issue.  Moreover, the very fact this evidence existed and
was potentially subject to use at trial may, for aught that appears, have played a salutary
role in the defendants' ultimate willingness to settle.

[23]Nor is it clear how the plaintiff's monetary success failed to serve the public
interest, since "[t]he damages a plaintiff recovers contributes significantly to the
deterrence of civil rights violations in the future."  *Rivera*, 477 U.S. at 575.

Cir. 1994).

### A.  Subpoena Service Fee.

The defendants object that the expense of serving trial subpoenas was incurred after the October 23 deadline recognized in the settlement agreement, that the plaintiff provides no supporting invoice or other evidence of the expense, and that he has not established the reasonableness of the charges.  (Doc. 152 at 23-24).  Because the plaintiff does not satisfactorily respond, (Doc. 154 at 19), this $110.00 expense will not be awarded.

### B.  Private Investigator Expenses.

Mr. Brewster paid a private investigator $2,337.19 for locating and interviewing witnesses.  The defendants do not deny that such services were needed but instead argue they are not compensable and that the rates charged are unreasonable.  (Doc. 152 at 24-25).

"Clearly, a 'reasonable attorney's fee' [under Section 1988] cannot have been meant to compensate only work performed personally by members of the bar.  Rather, the term must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client; and it must also take account of other expenses and profit."  *Jenkins*, 491 U.S. at 285.  Thus, the work of paralegals is compensable as part of attorney's fees.  *Id.*  More broadly, "[t]he authority granted in section 1988 to award a reasonable attorney's fee include[s] the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services."  *Northcross v. Board of Education*, 611 F.2d 624, 639 (6th Cir. 1979).

-21-

Most circuits have adopted the *Northcross* standard,[24] and none is known to have rejected it.  The Eleventh Circuit has made a similar pronouncement but has identified the recovery as one of costs rather than attorney's fees.  "We hold that, with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988."  *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983); *accord Barnes*, 168 F.3d at 438-39.

Following *Dowdell*, the Supreme Court ruled that the term "costs" in Section 1988 is no broader than it is in Section 1920.  *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 87 n.3 (1991).  While the Supreme Court appears to have precluded an award of reasonable expenses as part of costs, *Dowdell*'s forceful defense of allowing civil rights attorneys their reasonable expenses, 698 F.2d at 1188-92, leaves no doubt that the Eleventh Circuit would approve the awarding of reasonable expenses as part of attorney's fees.  Indeed, it is doubtful that *Jenkins* would allow a contrary result.

Work properly performed by paralegals and compensated as part of a Section 1988 fee award includes "locating and interviewing witnesses."  *Jenkins*, 491 U.S. at 288 n.10.  When the same work is performed by a private investigator, the reasonable cost thereof is recoverable as part of the attorney's fee award pursuant to the *Northcross* formulation.  *Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) (Section 1988).  The district court cases on which the defendants rely either were decided under Section 1920 or ignored the lines of authority discussed above.

---

[24]*E.g., Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2nd Cir. 1987) (ADEA); *Planned Parenthood v. Attorney General*, 297 F.3d 253, 267 (3rd Cir. 2002) (Section 1988) *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988) (Section 1988); *Associated Builders & Contractors v. Orleans Parish School Board*, 919 F.2d 374, 380 (5th Cir. 1990) (Section 1988); *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996) (copyright); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986) (Section 1988); *see also West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 87 n.3 (1991) (quoting *Northcross*).

The investigator charged $55 an hour for his time in 2007 and $65 an hour thereafter.  The defendants fault Mr. Brewster for not providing evidence of the market rate for private investigators or of this investigator's skills, education, experience and reputation.  The defendants offer no authority for the latter proposition which, if accepted, would similarly require affirmative evidence of the qualifications of individual paralegals and even court reporters.  As for hourly rates, judges in this district have repeatedly approved paralegal rates of $75 an hour.  *See Adams v. Austal, U.S.A., L.L.C.*, 2009 WL 3261955 at *2 (S.D. Ala. 2009) (collecting cases).  As the investigator was performing work that a paralegal (or even attorney) may properly perform, the Court concludes that the hourly rate is reasonable.[25]

## C. Computerized Legal Research.

The defendants argue that the cost of such research cannot be awarded and that the cost has not been adequately substantiated or justified.  (Doc. 152 at 25-27).

The Eleventh Circuit has concluded that the costs of computerized legal research may be recovered under Section 1988 as a reasonable expense under the *Dowdell* test. *Johnson v. University College*, 706 F.2d 1205, 1209 (11th Cir. 1983); *see also Terry Properties, Inc. v. Standard Oil Co.*, 799 F.2d 1523, 1540 (11th Cir. 1986) (citing *Johnson* for the proposition that "reasonable costs of computerized research may be recoverable"). While the appellate court has subsequently denied recovery for such expenses in a civil rights case, *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996), it did so without citation to *Dowdell*, *Johnson* or *Terry Properties* but only to Section 1920, which does not govern the award of expenses under Section 1988.  Nor may a later panel overrule a prior panel's decision.  *E.g., United States v. Kaley*, 579 F.3d 1246, 1255 (11th

---

[25]The defendants note the investigator's mileage rate and several additional charges but do not articulate challenges to them.  (Doc. 152 at 24).  The Court therefore leaves these elements intact.

Cir. 2009) (identifying exceptions).

*Johnson* and *Terry Properties* are in accord with the majority view.  *See Trustees v. Redland Insurance Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006) (identifying the First, Second, Ninth, Tenth and D.C. Circuits as allowing recovery of computerized legal research costs as part of an attorney's fee award); *cf. Haroco, Inc. v. American National Bank & Trust Co.*, 38 F.3d 1429, 1440-41 (7th Cir. 1994) (costs of computerized research are part of attorney's fees and thus cannot be recovered under Section 1920).  The defendants' cases, (Doc. 152 at 26-27), were decided under Section 1920 and/or did not apply the *Dowdell* standard.  The only one of the defendants' cases that did so expressly agreed that computerized legal research costs are recoverable as part of an attorney's fee award under Section 1988.

The defendants complain that counsel did not submit "supporting invoices or other evidence to support these bare-bones line items" and did not show "how the ostensible electronic research related to the claims he did not abandon or to discovery issues on which he prevailed."  (Doc. 152 at 15-16).  Counsel do not respond to these objections. Accordingly, this $549.18 expense will not be awarded.


**D.  Copying and Postage.**

The defendants argue that such expenses are not recoverable and that counsel have not shown them to be recoverable in this case on a number of grounds.  (Doc. 152 at 27-28).

The Eleventh Circuit has upheld awards under Section 1988 for both postal expenses, *Dowdell*, 698 F.2d at 1192, and copying.  *Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1219 (11th Cir. 2008), *cert. granted in part*, 129 S. Ct. 1907 (2009); *accord NAACP v. City of Evergreen*, 812 F.3d 1332, 1337 (11th Cir. 1987) ("Under this [*Dowdell*] standard, copying costs normally should be included.").  Of the defendants' two district court cases, one did not involve Section 1988 or address the *Dowdell*

standard, and the other expressly agreed that *Dowdell* provides for the recovery of postage and photocopying.

The defendants complain that counsel provided only an unexplained line item, silent as to the number of copies or the per-page cost, the number and cost of mailings, or the reasonableness of any of these charges.  In his reply brief, the plaintiff belatedly and incompletely addresses these deficiencies.  (Doc. 154 at 22).  Accordingly, this $564.73 expense will not be awarded.

## CONCLUSION

The analysis above, while the fruit of the Court's conscientious effort to address the limited presentation of the parties, should not be understood as a definitive treatment of attorney's fees and expenses under Section 1988 or similar statutes.  Based on the argument and authority presented, and except as set forth above, the plaintiff's motion for award of attorneys' fees, costs and expenses is **granted**.  Mr. Brewster is awarded attorney's fees in the amount of $81,270 and expenses in the amount of $6,159.24.  Mr. Mackey is awarded attorney's fees in the amount of $16,525 and expenses in the amount of $2,506.52.

DONE and ORDERED this 29th day of January, 2010.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE